IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01558-KLM

JOSEPH LANG,

     Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS, LLC,
DANIEL O. REED,
SUSAN TIONA,
JUAN C. HERRAEZ SANCHEZ, and
ZACHARY ENGELBERT,

     Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant Zachary Engelbert's ("Engelbert")

**Motion to Dismiss Plaintiff's Verified First Amended Complaint (ECF 131) Pursuant**

**to Fed. R. Civ. P. 12(b)(6) For Failure to State a Claim** [#156][1] (the "Motion").[2]  Plaintiff

filed a Response [#165] in opposition to the Motion [#156], and Defendant Engelbert filed

a Reply [#173].  The Court has reviewed the Motion [#156], the Response [#165], the

Reply [#173], the entire case file, and the applicable law, and is sufficiently advised in the

premises.  For the reasons stated below, the Motion [#156] is **GRANTED**.

### I.  Background

---

[1] "[#156]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent  of the parties.  *See* [#168, #171].

On April 30, 2021, Plaintiff filed an Amended Complaint [#131], which is the operative pleading in this case.  All well-pled facts from the Amended Complaint [#131] are accepted as true and viewed in the light most favorable to Plaintiff.  *See Barnes v. Harris*, 783 F.3d 1185, 1191-1192 (10th Cir. 2015).

Plaintiff is currently an inmate in the custody of the Colorado Department of Corrections ("CDOC").  *Am. Compl.* [#131] ¶ 9.  About six months after Plaintiff fell off the top bunk in his cell at Bent County Correctional Facility ("BCCF") and injured his back, he "began experiencing chronic and significant lower back pain, and accompanying significant loss of movement in his left leg*." Id.* ¶ 21.  Plaintiff began to receive medical treatment from BCCF on November 12, 2014.  *Id.* ¶¶ 22, 23.  Plaintiff was eventually transferred to Fremont Correctional Facility ("FCF").  *Id.* ¶ 32.

As is relevant here, on February 14, 2020, Plaintiff was seen at FCF by Defendant Engelbert, a health care provider.  *Id.* ¶ 93.  In the appointment notes, Defendant Engelbert noted that Plaintiff was there "today to see when he is being seen again with neurology . . . .  He is very frustrated because nothing is being done quickly about his back pain and inability to ambulate without his walker."  *Id.*  In his physical assessment, Defendant Engelbert noted that there was lower left leg muscle atrophy and that "it was discussed that this patient is waiting to receive an appointment with neurosurgery, he has already been approved, I am not able to see what his procedure he was approved for. [sic]  There currently is not a date listed for this either.  Pt. is very frustrated but I am unable to rush this along faster."  *Id.*  While acknowledging that Plaintiff needed to be seen by the neurosurgeon for follow-up appointments for his initial epidural spinal injections ("ESI"), no follow up treatment plan was indicated in this appointment entry.  *Id.*

On March 9, 2020, Plaintiff was seen a second time by Defendant Engelbert who again noted "left foot weakness and atrophy with neuropathy.  Limping gait."  *Id.* ¶ 94. Defendant Engelbert further noted: "FAILED Physical therapy and Multiple injections – Follow up PARKVIEW Pain and neurosurgery team – Needs to see Pain again for medial branch blocks."  *Id.*  While noting that Plaintiff needed to see the Parkview pain and neurosurgery team, no specific appointment plan was indicated in the March 9, 2020 visit. *Id.*

On May 14, 2020, Plaintiff was seen a third time by Defendant Engelbert.  *Id.* ¶ 95. Defendant Engelbert included the same summaries from the March 9, 2020 visit and noted again a "Follow up PARKVIEW Pain and neurosurgery team – Needs to see Pain again for medial branch blocks."  *Id.*  There is no indication in the report if any progress on scheduling a pain clinic consultation had occurred since Plaintiff's March 9, 2020 visit. *Id.*

On May 28, 2020, Plaintiff was seen a fourth time by Defendant Engelbert.  *Id.* ¶ 96.  Defendant Engelbert yet again included the same summaries from the March 9, 2020 visit, and noted again a "Follow up PARKVIEW Pain and neurosurgery team – Needs to see Pain again for medial branch blocks."  *Id.*  There is no indication in the report if any progress on scheduling a pain clinic consult had occurred since Plaintiff's May 14, 2020 visit.  *Id.*

On June 3, 2020, there is a note in Plaintiff's medical file indicating that he returned from a day trip after receiving a lower back epidural.  *Id.* ¶ 97.  The file notes that Plaintiff reported that the epidural helped with his pain and that he could raise his left leg higher than before.  *Id.*

On June 23, 2020, Plaintiff was seen a fifth time by Defendant Engelbert. *Id.* ¶ 98. Defendant Engelbert included the same summaries from the March 9, 2020 visit, but this time noted that Plaintiff had requested to "know if I am scheduled for a follow up at the pain clinic.  If not will you schedule please." *Id.*  There was no other indication in the report of any progress on scheduling a pain clinic consult since Plaintiff's May 28, 2020 visit.  *Id.*  Plaintiff alleges that, after multiple visits, Defendant Engelbert appeared to be making no effort to facilitate Plaintiff's recommended treatment.  *Id.*

Plaintiff asserts two claims for relief: (1) a § 1983 claim for failure to timely refer and schedule appointments, against all the individual medical provider defendants including Defendant Engelbert; and (2) a § 1983 claim for failure to approve offsite neurosurgery or pain clinic visits, recommended ESI, and surgery. *Am. Compl.* [#131] ¶¶ 116-24.  The heading of this second claim states that it is asserted against Defendant Correctional Health Partners "(CHP)" "and the FCF Medical Providers," but the body of this claim only discusses Defendant CHP and only seeks relief from Defendant CHP. *Am. Compl.* [#131] ¶¶ 120-24.  Further, both parties' briefs appear to indicate that only the first claim is asserted against Defendant Engelbert.  Thus, it appears that "the FCF Medical Providers" mentioned in the heading of the second claim was a mere drafting error and that this claim is not asserted against Defendant Engelbert.  In the present Motion [#156], Defendant Engelbert [#156] seeks to dismiss Plaintiff's only claim against him pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.*" Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in the original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

Because inmates "must rely on prison authorities to treat [their] medical needs," the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 178 (1976)).  The test for deliberate indifference is both objective and subjective, in that a detainee must establish that: (1) he was deprived of a medical need that is, objectively, "sufficiently serious," and (2) the defendant subjectively knew of and disregarded "an excessive risk to [the detainee's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).  Here, Defendant Engelbert does not challenge the adequacy of Plaintiff's allegations as to the objective prong, and therefore the Court turns directly to the subjective prong. *See Motion* [#156] at 9.

The subjective component of the deliberate indifference test "requires a plaintiff to demonstrate that officials acted with a 'sufficiently culpable state of mind.'" *Vega v. Davis*, 673 F. App'x 885, 890 (10th Cir. 2016) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Moreover, "a prison official cannot be liable unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal quotation marks omitted).  Importantly, "it is obduracy and

wantonness, not inadvertence or error in good faith," that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

A prisoner's claim of deliberate indifference is not valid simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[A] prison doctor remains free to exercise his or her independent professional judgment," *id.* (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). An inmate's claims against employees or agents of a prison medical department are not viable under Section 1983 when the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment, or maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. In short, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *see also Callahan*, 471 F.3d at 1160. Moreover, allegations of medical malpractice are not sufficient to establish a constitutional violation. *See Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (stating negligence is not compensable as a constitutional deprivation).

Additionally, a medical professional can be liable under the deliberate indifference standard if he "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he

delays or refuses to fulfill that gatekeeper role due to deliberate indifference." Under such circumstances, "it stands to reason that he may also be liable for deliberate indifference from denying access to medical care." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). To "establish gatekeeper liability, a plaintiff must still allege that the need for medical care was obvious to the prison official." *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1227 (D. Colo. 2016).

Here, Defendant Engelbert argues that Plaintiff's allegations against him fail to satisfy the subjective component because there are no allegations "establishing that [Defendant] Engelbert refused to believe Plaintiff's symptoms." *Motion* [#156] at 10. Defendant Engelbert further asserts that Plaintiff fails to sufficiently allege that Defendant "Engelbert knew Plaintiff faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* at 9. (internal quotation marks omitted). Finally, Defendant Engelbert asserts that Plaintiff fails to sufficiently allege that Defendant Engelbert "deliberately refused to provide medical attention as necessary to state a claim." *Id.* at 10.

Plaintiff contends that "Defendant [Engelbert] *did* have knowledge that the follow up medical appointments with an outside specialist were necessary to diagnose and treat his condition." *Response* [#165] at 2 (emphasis in the original). Plaintiff further states that these appointments "would have treated Plaintiff's severe back and leg pain and prevented deterioration in Plaintiff's condition, which delay in treatment resulted in plaintiff's inability to walk except for short periods of time and potential permanent disability." *Id.*

"If a prison doctor . . . responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard . . . But where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Self*, 439 F.3d at 1232.  Plaintiff's allegations indicate that Defendant Engelbert first knew of Plaintiff's back pain and lower leg muscle atrophy on February 14, 2020.  *Am. Compl.* [#131] ¶ 93-97.   Plaintiff asserts no facts indicating that he was undergoing a medical emergency during this visit.  In addition, Plaintiff alleges no facts to suggest that the threat of his back and/or leg's future deterioration was obvious to Defendant Engelbert or made known to him during or after this appointment.  Defendant Engelbert appears to have responded to Plaintiff's reported symptoms by seeing Plaintiff on almost a monthly basis thereafter.

The Court finds that Plaintiff has not sufficiently alleged that Defendant Engelbert's response to Plaintiff's condition was constitutionally inadequate considering the information Plaintiff alleges Defendant Engelbert had at the time.  Based on Plaintiff's allegations, construing them in the light most favorable to him, there is no indication that Defendant Engelbert knew that Plaintiff was at "a substantial risk of serious harm" following the February 20, 2020 appointment and before Plaintiff's June 23, 2020 appointment.  *See Farmer*, 511 U.S. at 842; *see also Duffield*, 545 F.3d at 1239 ("[T]he 'contention that [plaintiff] was denied treatment by a specialist is . . . insufficient to establish a constitutional violation.'" (quoting *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992)); *Self*, 439 F.3d at 1230 ("'[I]nadvertent failure to provide adequate medical care' is not enough, nor does 'a complaint that a physician has been negligent in

diagnosing or treating a medical condition . . . state a valid claim of medical mistreatment under the Eighth Amendment.'" (quoting *Estelle*, 429 U.S. at 105, 106 (ellipses in the original)).

Additionally, the Court finds that Plaintiff's disagreement with how Defendant Engelbert treated his back and leg pain coupled with the conclusory allegation that Defendant Engelbert was "making zero effort to facilitate Plaintiff's recommended treatment," does not adequately allege a constitutional violation like deliberate indifference.  *Am. Compl.* [#151] ¶ 98.  In fact, Plaintiff cites the February 14, 2020 appointment note that Defendant Engelbert was "unable to rush this along faster" but does not affirmatively allege that this was untrue.  *Id.* ¶ 93.  Plaintiff does not allege that the delayed facilitation of his follow-up appointments was for an improper reason or, more importantly, that Defendant Engelbert had any involvement in the delayed facilitation. *See generally Am. Compl.* [#131]; *see Weitzman v. City & County of Denver*, No.17-cv-02703-KLM, 2019 WL 1438072, at *9 (D. Colo. March 31, 2019) ("Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency.") (quoting *Berry v. Peterman*, 604 F.3d 534, 442 (7th Cir. 2010)).  Thus, the Court finds that Plaintiff has failed to adequately allege the subjective component of his deliberate indifference claim against Defendant Engelbert.

Accordingly, the Motion [#156] is **granted** to the extent that Plaintiff's sole claim against Defendant Engelbert is **dismissed with prejudice**.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (holding dismissal on the merits of the complaint is ordinarily with prejudice).

## IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#156] is **GRANTED**.  The first claim is

**DISMISSED with prejudice** with respect to Defendant Engelbert.


Dated:  December 23, 2021

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge